# In the United States Court of Federal Claims

No. 20-275
Filed: December 1, 2020
(**Not for Publication**)

---

**EDDY JEAN PHILIPPEAUX,**

*Plaintiff*,

v.

**THE UNITED STATES,**

*Defendant.*

---

## MEMORANDUM OPINION AND ORDER

**TAPP, Judge.**

In this military pay suit, *pro se* Plaintiff, Eddy Jean Philippeaux, a former United States Navy servicemember, Air Force Reservist, and Air National Guardsman, seeks alteration of his military records and other, miscellaneous injunctive and compensatory relief. Mr. Philippeaux suffered a minor head injury in 1977, to which he now attributes several current physical and mental conditions, as well as socioeconomic hardship. However, a military review board found that Mr. Philippeaux did not establish that he was unfit for service at the time of his honorable discharge from the Navy. This conclusion was bolstered by Mr. Philippeaux's subsequent service in the Air Force Reserves, and later, the Air National Guard, which required a physical examination prior to enlistment. Mr. Philippeaux moves for judgment on the administrative record seeking entry of an order that sets aside that decision. The United States maintains that the decision of the military review board was correct.

For the reasons explained below, the United States' Cross-Motion for Judgment on the Administrative Record (ECF No. 61) is **GRANTED**, and Mr. Philippeaux's Motion for Judgment on the Administrative Record (ECF No. 52) is **DENIED**. Because the Court finds the United States is entitled to judgment on the administrative record, it need not address Mr. Philippeaux's Motion for Declaratory Judgment (ECF No. 11), Motion for Permanent Injunction (ECF No. 23), and Motion to Strike (ECF No. 25). Therefore, those motions are **DENIED AS MOOT**.

## I.    Background

### A.  Mr. Philippeaux's Military Service

Mr. Philippeaux enlisted in the United States Navy in 1972. (AR1, 965).[1] He served as a Storekeeper and Procurement Clerk. On October 12, 1977, while onboard a frigate, the U.S.S. McCandless, Mr. Philippeaux sought medical attention for a minor laceration to his face sustained from "hitting a wall." (AR268). He was treated with two sutures and returned to full duty. (*Id.*). The Navy honorably discharged Mr. Philippeaux on October 1, 1980, and assigned him a RE-1 reenlistment code indicating his fitness for reenlistment and retention in the Naval Reserves. (AR1, 3, 725, 1352). As part of his discharge, the Navy performed a physical examination of Mr. Philippeaux on September 16, 1980. (AR1, 1311–12, 1314). Mr. Philippeaux self-reported that he was "healthy" and "not [taking] any medication[.]" (AR1311). On this same form, Mr. Philippeaux indicated that he was not currently suffering, nor had he ever suffered, from a litany of medical conditions including head injury, unconsciousness, depression, dizziness, eye trouble, or amnesia. (*Id.*). The examining physician did not list any medical abnormalities. (AR1312–13).

On October 2, 1980, the day following his discharge from the Navy, Mr. Philippeaux enlisted in the United States Air Force Reserves as a Staff Sergeant. (AR974–77). Just over three years later, in 1983, Mr. Philippeaux enlisted in the Air National Guard. (AR1). On November 19, 1983, Mr. Philippeaux presented for an enlistment physical examination. (AR1300). Again, he reported that he was not currently suffering, nor had he ever suffered, from a myriad of medical conditions including head injury, unconsciousness, depression, dizziness, eye trouble, or amnesia. (*Id.*). Mr. Philippeaux, again, self-reported that he was "presently in very good health" and "under no medications." (*Id.*). After being medically cleared for enlistment, Mr. Philippeaux joined the Air National Guard for the District of Columbia. (AR978–80). The Air National Guard discharge Mr. Philippeaux for "unsatisfactory participation" on October 27, 1989. (AR2, 970, 978, 972).

### B.  Records from the Department of Veterans Affairs, the Board for Veterans Appeals, and the United States Court of Appeals for Veterans Claims

Seven years following his discharge from the Air National Guard, and nineteen years following his injury while onboard the U.S.S. McCandless, on July 12, 1996, Mr. Philippeaux presented to a Department of Veterans Affairs ("VA") Outpatient Clinic where he was evaluated for mental disorders. (AR173–77). The examining physician recorded extensive notes about Mr. Philippeaux's service, and evaluated his mental fitness, but made no mention of Mr. Philippeaux's 1977 injury or a possible connection to his observed mental state. (*Id.*). The VA diagnosed Mr. Philippeaux with dysthymic depression and assessed his psychiatric incapacity as "moderate to severe." (AR176). Much later, in 2017, the VA retroactively determined that Mr. Philippeaux was 70 percent disabled and unemployable effective February 27, 1995. (AR204).

---

[1] The Court cites to the Administrative Record, (ECF No. 41), and the Supplement to the Administrative Record, (ECF No. 51), as "(AR_)."

On May 9, 2011, the VA upgraded that disability assessment to 100 percent, effective July 1, 2008. (AR2, 256).

In December of 2009, Mr. Philippeaux filed an informal claim with the VA asserting entitlement to service connection for a traumatic brain injury ("TBI"). (AR12). The VA denied that claim in May of 2010. (*Id.*). Mr. Philippeaux appealed his claim to the Board for Veterans' Appeals ("the Board"), which also denied his claim, finding that "the competent evidence of record, including 2010 neurological testing and a February 2015 VA examination report, did not establish a diagnosis of a TBI or residuals thereof." (AR13). Mr. Philippeaux appealed this denial to the United States Court of Appeals for Veterans Claims. (*Id.*). The Veterans Claims Court set aside that denial and remanded Mr. Philippeaux's case to the Board, finding "the Board did not address favorable material evidence[.]" (AR15); *see also Philippeaux v. Wilkie*, 814 F. App'x 603 (Fed. Cir. 2020).

### C.  Military Corrections Boards Proceedings

On March 26, 2018, Mr. Philippeaux applied for correction of his military records to reflect a disability discharge under 10 U.S.C. § 1201. (AR168). The Board for the Correction of Naval Records ("BCNR") evaluated his application and ultimately denied the request, finding that "the evidence submitted was insufficient to establish the existence of probable material error or injustice." (AR165). The BCNR explained that "[t]here was no medical evidence that [Mr. Philippeaux] [was] diagnosed with a mental health condition or a Traumatic Brain Injury after [the] 1977 injury to [his] face[.]" (AR165–66). Notably, the BCNR also found that because Mr. Philippeaux received both a discharge physical examination from the Navy and an enlistment physical from the Air National Guard, there was "strong objective evidence" that Mr. Philippeaux was fit for active duty when he was discharged from the Navy, and thus, not entitled to a change in his records to reflect a qualifying disability discharge. (AR166). However, the BCNR failed to consider Mr. Philippeaux's Air Force service records from October 2, 1980, until his enlistment in the Air National Guard in 1983, and incorrectly found that period to be a break in service. (*See* AR164).

On October 29, 2019, Mr. Philippeaux petitioned the BCNR for reconsideration of its decision. (AR5, 35). However, on reconsideration, the BCNR found that Mr. Philippeaux had failed to submit "new and material evidence" necessary to overturn the decision of the BCNR. (AR6).

### D.  Court of Federal Claims Proceedings

On March 6, 2020, Mr. Philippeaux filed a Complaint in this Court alleging he suffered a TBI connected to the injuries he sustained in 1977. (Compl., ECF No. 1). Mr. Philippeaux alleges that this injury occurred during his naval service and resulted in numerous medical complications and other harms. (*See generally*, Compl.). Notably, Mr. Philippeaux contends he "did not receive the standard, proper and appropriate care" following his head injury, that the Navy improperly discharged him from service without a permanent disability designation, and that the BCNR's denial of his application to change the character of his discharge was arbitrary, capricious, and contrary to law. (Compl. at 2–3, 16). Mr. Philippeaux's Complaint contains an

extended discussion of his alleged medical conditions, all of which, he alleges, are connected to his service in one way or another.

Helpfully, Mr. Philippeaux distills his grievances into two counts. Count I alleges that the Navy "provided Mr. Philippeaux an erroneous character of discharge which has left him with the inability to earn a living while he is not receiving disability payments" and the United States "has failed to pay [him] the pay and allowances that he is entitled to receive" under 10 U.S.C. § 1201. (Compl. at 27). Count II alleges that the United States' actions "resulted in [Mr. Philippeaux] being deprived of property interests, pain and suffering, homelessness, loss of his mother, poverty to his children, aggravation of health, deprivation of social standing and [the] wrongful death of his mother due to homelessness[.]" (Compl. at 28). Mr. Philippeaux brings Count II under the Due Process and Equal Protection clauses of the Fifth Amendment to the United States Constitution. (*Id.*).

On June 10, 2020, in light of the BCNR's factually incorrect findings regarding Mr. Philippeaux's service history, the Court remanded Mr. Philippeaux's claims to the BCNR. (Remand Order, ECF No. 28). On remand, the Court directed the BCNR "to (1) reconsider whether [Mr.] Philippeaux is entitled to correction of his military records denied by the BCNR in its original decision dated October 1, 2018, taking into account the correct chronology of Mr. Philippeaux's service history; and (2) consider any additional records submitted by Mr. Philippeaux." (*Id.*).

On June 29, 2020, the BCNR issued a second decision denying Mr. Philippeaux relief. (AR1–4). The BCNR determined that "no change to [Mr. Philippeaux's] record was warranted" and he was "being appropriately compensated for [his] service connected disability conditions based on [his] 100% VA rating that entitles [him] to a significant tax-free monthly payment, free VA medical treatment, and other related disability benefits[.]" (AR4). In support of its decision, the BCNR cited Mr. Philippeaux's discharge examination, his RE-1 discharge code specifying he was fit for reenlistment, his reenlistment in the Air Force Reserves, and his enlistment in the Air National Guard, which included a physical examination that determined Mr. Philippeaux was fit for service. (AR3–4). The BCNR concluded that Mr. Philippeaux's post-discharge medical diagnoses and disability ratings were too far removed from his discharge to be probative of whether he was symptomatic or unfit for naval service at the time of his discharge on October 1, 1980. (AR3). The BCNR ultimately opined that "any changes in [Mr. Philippeaux's] military record should be from [his] time after [his] Navy service since [he] allege[s] [his] disability symptoms later resulted in [his] 'demotion' and 'involuntary discharge' from the Air National Guard." (AR4).

On July 23, 2020, the United States filed notice of this BCNR decision. (ECF No. 35). Prior to setting a schedule for the parties to move for judgment on the administrative record, the Court requested Mr. Philippeaux's consent to appoint *pro bono* counsel. (ECF No. 37). Mr. Philippeaux declined the Court's invitation and elected to proceed *pro se*. (ECF No. 39). Thereafter, the parties filed cross-motions for judgment on the administrative record. (ECF Nos. 52, 61). Briefing is now complete and this matter stands submitted for decision.

## II.    Discussion

*A.  Legal Standards*

i.  <u>Military Discharge</u>

Military retirement for disability is governed by 10 U.S.C. § 1201, a money-mandating statute. *Chambers v. United States*, 417 F.3d 1218, 1223 (Fed. Cir. 2005). Congress amended § 1201 after Mr. Philippeaux's separation from the Navy. At the time of his discharge, § 1201 provided:

> Upon a determination by the Secretary concerned that a member of a regular component of the armed forces entitled to basic pay, or any other member of the armed forces . . . is unfit to perform the duties of his office, grade, rank, or rating because of physical disability incurred while entitled to basic pay, the Secretary may retire the member [for disability.]

10 U.S.C. § 1201 (1976).

SECNAV Instruction 1850.4 spells out the personnel involved in the Secretary's making of this determination of unfitness and disability:

> The Secretary of the Navy performs his statutory responsibility by means of the Department of the Navy Physical Disability Evaluation System. His principal agent in this regard is the Director, Naval Council of Personnel Boards. The Central Physical Evaluation Board, regional physical evaluation boards, Physical Review Council and Disability Evaluation System Counselors, together with other Navy and Marine commands and activities, comprise the Department of the Navy Disability Evaluation System.

(DA1, ECF No. 61-1).[2] Thus, the Disability Evaluation System was "designated and directed to act on behalf of the Secretary of the Navy in making determinations as to fitness for active duty, . . . entitlement to disability benefits, and disposition of members properly referred for physical disability evaluation[.]" (DA2). Servicemembers were not referred for a disability evaluation unless their "fitness for continued active service [was] in question." (DA7, 8). But not all physical defects "justify referring a case for disability evaluation." (DA8). Referral was deemed appropriate "only when in the opinion of the medical board the defect materially interferes with the member's ability to reasonably fulfill the purpose of [the member's] employment on active duty." (DA8).

---

[2] Defendant's Appendix is attached to the United States' Cross-Motion for Judgment on the Administrative Record, (ECF No. 61). Helpfully, Defendant's Appendix contains several former military regulations pertinent to Mr. Philippeaux at the time of his discharge from the Navy. For simplicity, rather than cite to each of these historical regulations, the Court cites to this appendix as "(DA_)."

Under SECNAVINST 1850.4, the Disability Evaluation System might deem a servicemember "unfit" if he was "unable to perform the duties of his office, grade, rank, or rating in such a manner as to reasonably fulfill the purpose of his employment on active duty." (DA5). The mere presence of a disability did not mean a servicemember must have been found "unfit," but rather the "nature and degree of the functional impairment produced by the disability" was compared with "the requirements of the duties to which the member may reasonably expect to be assigned[.]" (DA5).

Congress has created several administrative boards to adjudicate claims brought by current and former military servicemembers. Under 10 U.S.C. § 1552, Congress created administrative boards for the correction of military records. Congress created administrative boards "to review the discharge or dismissal" of a servicemember under 10 U.S.C. § 1553.

In 2014, then-Secretary of Defense Charles Hagel issued a memo (the "Hagel Memo") providing supplemental guidance to the § 1552 corrections boards. (DA29–32). The Hagel Memo recognized that numerous Vietnam veterans had sought upgrade of their discharge characterizations[3] for Post-Traumatic Stress Disorder, which was not recognized at the time of service "and in many cases, diagnoses were not made until decades after service was complete." (DA29). The result was that servicemembers' records often "did not contain substantive information concerning medical condition in either Service treatment records or personnel records" and "[i]t has therefore been extremely difficult to document conditions that form a basis for mitigation in punitive, administrative, or other legal actions or to establish a nexus between PTSD and the misconduct underlying" other than honorable discharge conditions. (DA29). The memo attached medical guidance "intended to ease the application process for veterans who are seeking redress[.]" (DA29). The attached medical guidance advocated for "[l]iberal consideration [of] petitions for changes in characterization of service to Service treatment record entries which document one or more symptoms which meet the diagnostic criteria of [PTSD] or related conditions." (DA31). In other words, where a servicemember's discharge was characterized as "Other Than Honorable," the military corrections boards were to give special consideration to symptoms that indicated PTSD and were to consider whether PTSD may have caused the misconduct related to that servicemember's discharge.

In 2017, then-Under Secretary of Defense Anthony Kurta issued a memo (the "Kurta Memo") clarifying the Hagel Memo and expanding its scope to encompass § 1553 discharge and dismissal administrative boards. (*See* Mot. for Judicial Notice at 3, 6, ECF No. 42).[4] The Kurta

---

[3] A servicemember's discharge "characterization" relates to whether the servicemember was discharged for misconduct. A Navy servicemember's discharge may be characterized as "Honorable," "General," or "Other Than Honorable." *Wisotsky v. United States*, 69 Fed. Cl. 299, 310 (2006). "When the [servicemember's] separation is solely for reasons constituting substandard performance of duty . . . the characterization must be Honorable." *Id.* (citing SECNAVINST 1920.6A, encl. 5, ¶ 1a, Guidelines on Characterization of Service (Nov. 21, 1983)).

[4] On Motion from Mr. Philippeaux, the Court took judicial notice of the Kurta Memo. (ECF No. 51).

Memo specified that the guidance from the Hagel Memo was not limited to "Other Than Honorable" discharge characterizations, "but rather apply to any petition seeking discharge relief including requests to change the narrative reason, re-enlistment codes, and upgrades from General to Honorable characterizations." (*Id.* at 6). Importantly, by their own terms, neither the Hagel Memo nor the Kurta Memo applied to the fitness for duty or disability determinations.

### ii. Judgment on the Administrative Record

Where, as here, the parties have filed cross-motions for judgment on the administrative record, RCFC 52.1 provides a procedure for parties to seek the equivalent of an expedited trial on a "paper record, allowing fact-finding by the trial court." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005). Unlike summary judgment standards, genuine issues of material fact do not preclude a judgment on the administrative record. *See id.* at 1355–56. Questions of fact are resolved by reference to the administrative record. *Id.* at 1356.

In challenging determinations of a military corrections board, a plaintiff must demonstrate "by cogent and clearly convincing evidence," *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986), that the military board's decision was "arbitrary, capricious, unsupported by substantial evidence, or contrary to law." *Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006). It is well settled that "responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province; and that courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983) (citations omitted). Moreover, "military administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs." *Dodson v. United States*, 988 F.2d 1199, 1204 (Fed. Cir. 1993). Even if a plaintiff identifies error in the administrative proceedings, the plaintiff still must "establish that the error was prejudicial, i.e., that it affected the Board's ultimate conclusion[.]" *Fisher v. United States*, 81 Fed. Cl. 155, 159 (2008), *aff'd,* No. 2008-5094, 2010 WL 4009437 (Fed. Cir. Oct. 14, 2010); *see also Wagner v. United States*, 365 F.3d 1358, 1365 (Fed. Cir. 2004) (recognizing that although harmless error review is not appropriate in all cases, "[w]here reviewable standards or factors constrain the exercise of discretion, harmless error continues to be the appropriate test.").

A court may set aside an agency's decision if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or the decision is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Ala. Aircraft Indus., Inc. v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). However, "[w]hen substantial evidence supports the board's action, and when that action is reasonable in light of all the evidence presented, the court will not disturb the result." *Pope v. United States*, 16 Cl. Ct. 637, 641 (1989). The court's review "does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence." *Heisig*, 719 F.2d at 1157.

### iii. Motion to Dismiss

The Court recognizes that *pro se* plaintiffs' pleadings are generally held to "less stringent standards" than those of a professional lawyer. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

However, the Court cannot extend this leniency to relieve Mr. Philippeaux of his jurisdictional burden. *Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987). Whether a court has jurisdiction is a threshold matter in every case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). "If the Court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." RCFC 12(h)(3).

"The Court of Federal Claims is a court of limited jurisdiction." *Marcum LLP v. United States*, 753 F.3d 1380, 1382 (Fed. Cir. 2014). This Court resolves disputes over access to the federal government's wallet. The Tucker Act is the primary statute conferring jurisdiction on this Court. The Tucker Act waives sovereign immunity for claims (1) founded on an express or implied contract with the United States; (2) seeking a refund for a payment made to the government; or (3) arising from federal constitutional, statutory, or regulatory law mandating payment of money damages by the United States government. *Ontario Power Generation, Inc. v. United States*, 369 F.3d 1298, 1301 (Fed. Cir. 2004); *see also United States v. Navajo Nation*, 556 U.S. 287 (2009); *United States v. Mitchell*, 463 U.S. 206 (1983). Standing alone, however, the Tucker Act does not itself create a substantive right enforceable against the United States. *Ferreiro v. United States*, 501 F.3d 1349, 1351 (Fed. Cir. 2007). To come within jurisdictional reach, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005).

### B. The United States is Entitled to Judgment on the Administrative Record with Respect to Count I

In Count I of his Complaint, Mr. Philippeaux raises allegations related to his discharge condition. (Compl. at 27). In his Motion for Judgment on the Administrative Record, Mr. Philippeaux seeks an order from this Court setting aside the second BCNR decision finding him not disabled while on active duty. (Pl.'s MJAR, ECF No. 52). Mr. Philippeaux supports his request by raising numerous allegations which he scatters throughout his Motion; the Court construes these allegations liberally. *See Kerner*, 404 U.S. 519. First, he contends that the BCNR "failed to comply with the criteria set by DODI 1332.18 in determining whether or not [Mr. Philippeaux] was fit to reenlist." (*Id*. at 20). Second, he alleges that he was "permanently disabled on active duty . . . because of his demonstrated endocrine and mental disorders[.]" (*Id*. at 2). Third, he highlights that the VA awarded him a 100 percent disability rating and declared him permanently disabled unemployable. (*Id*.). Fourth, Mr. Philippeaux asserts that his medical examination on discharge indicated he had cognitive and memory defects stemming from his 1977 head injury which should have entitled him to a disability discharge. (*Id*. at 18). Fifth, he argues that the Navy erred by failing to refer him for a Disability Evaluation System Board based on the Kurta Memo and his 1980 medical evaluation. (*Id*. at 2–3, 20). Sixth, Mr. Philippeaux summarily asserts that he met the criteria for disability retirement based on the Kurta Memo, but the BCNR nevertheless failed to heed that guidance. (*Id*. at 3, 19).

In its Response, the United States contends that the first four arguments "attempt[] to have the Court impermissibly reweigh the evidence and substitute its judgment for that of the BCNR." (Def.'s Mot. at 20, ECF No. 61). As to the fifth, the United States argues that "Mr. Philippeaux has not demonstrated that the Navy improperly failed to refer him to the [Disability Evaluation System], but in any event, the error was not prejudicial." (*Id*. at 21). As to Mr.

Philippeaux's sixth substantive argument, the United States responds that the Kurta Memo does not apply to Mr. Philippeaux's case, but even if it did, the BCNR complied with it. (*Id.*).

For the reasons that follow, the Court agrees with the United States and finds that the United States is entitled to judgment on the administrative record with respect to Count I.

i.  The BCNR Applied the Correct Standard to Determine Fitness for Service and the Court Cannot Reweigh the Evidence Presented to the BCNR

As to the first of Mr. Philippeaux's allegations the Court was able to identify—that the BCNR failed to comply with Department of Defense Directive ("DODI") 1332.18 in reaching its decision on Mr. Philippeaux's fitness to reenlist —Mr. Philippeaux is incorrect. DODI 1332.18 states that:

> The primary requisite for eligibility for retirement or separation under reference (a) is that the member must be unfit, because of physical disability, to perform the duties of his office, grade, rank or rating.

(DA10). The BCNR relied on SECNAVINST 1850.4 (1977) in determining that "a service member is unfit due to a disability when the member is unable, because of the disease or injury, to perform the duties of their office, grade, rank or rating." (AR2; DA5). The Secretary of the Navy issued SECNAVINST 1850.4 "[t]o define a system for the evaluation of physical disability and the directives and policies pertaining to it[.]" (DA1). "Physical evaluation determinations are made independently and are . . .  controlled by regulations contained in the Disability Evaluation Manual (SECNAVINST 1850.4.)." *Chayra v. United States*, 23 Cl. Ct. 172, 181 (1991) (quoting JAG Manual 0801d); *see also McCray v. United States*, 3 Cl. Ct. 253, 256 (1983) (clarifying that "10 U.S.C. § 1216 (1976) directed the Secretary of the Navy to prescribe regulations relative to disability retirement determinations. Such regulations were issued by the Secretary of the Navy under the heading *Disability Evaluation Manual,* SECNAVINST 1850.4"). It is clear that the BCNR did not err in applying SECNAVINST 1850.4 to review Mr. Philippeaux's fitness determination. But in any event, the standards are nearly identical. Thus, even if SECNAVINST 1850.4 were not the correct standard for making a disability determination, the error would be harmless because Mr. Philippeaux would not have been prejudiced by the mistake. *See Sargisson v. United States*, 913 F.2d 918, 922–23 (Fed. Cir. 1990) (finding harmless error where there was no risk of prejudice to the serviceman due to the violation).

The second, third, and fourth grounds for Mr. Philippeaux's challenge to the BCNR decision would all require the Court to reweigh the evidence before the BCNR. In its decision dated June 29, 2020, the BCNR stated that it considered all the record evidence and determined that Mr. Philippeaux was fit for duty at the time of his discharge. (AR1–4). The BCNR considered the report of medical treatment following Mr. Philippeaux's October 12, 1977 injury, his medical examination upon his discharge from the Navy, his discharge with a determination that he was fit for reenlistment, his enlistments with the Air Force Reserves and Air National Guard, his Air National Guard enlistment physical examination, his nine years of service in those branches after his discharge from the Navy, his VA records establishing and adjusting his disability ratings, and other evidence. (AR1–4).

In considering Mr. Philippeaux's post-discharge diagnoses, the BCNR determined those diagnoses "were not probative on the issue of whether [Mr. Philippeaux] was symptomatic on 1 October 1980[,]" the date of his discharge from the Navy. (AR3). The BCNR concluded that the VA's medical evaluation "was too distant in time from [Mr. Philippeaux's] discharge date" and determined that "the results of the medical examination conducted contemporaneously with [his] discharge from the Navy was better evidence in determining [his] fitness for continued naval service at the time." (AR3). The BCNR evaluated the form completed during that medical examination and noted that Mr. Philippeaux self-reported that he was "healthy" and "not [taking] any medication[.]" (AR1311). Furthermore, the BCNR noted that on that same form, Mr. Philippeaux indicated that he was not currently suffering, nor had he ever suffered, from a catalog of medical conditions including head injury, unconsciousness, depression, dizziness, eye trouble, or amnesia. (*Id.*). The examining physician did not list any medical abnormalities, contrary to Mr. Philippeaux's assertions in his Complaint. (*Compare* AR1312–13 *with* Compl. (alleging a plethora of mental and physical disorders and conditions throughout)).

Substantial evidence supports the BCNR's conclusion and the Court declines Mr. Philippeaux's invitation to supplant the BCNR's judgment with its own. Mr. Philippeaux has offered nothing to rebut the presumption that military administrators act in good faith and are entitled to deference in determining who is fit or unfit to serve in the armed services. The BCNR determined that at the time of his discharge, Mr. Philippeaux's records showed he was "not symptomatic for any disability conditions at the time of his discharge and that [his] performance issues were not disability related," thus he was "more likely than not, fit for continued active duty on 1 October 1980 and, therefore, not eligible for assignment of physical disability as [his] narrative reason for separation from the Navy." (AR4).

In summary, the BCNR applied the correct standard to assess Mr. Philippeaux's fitness at the time of his discharge, and reasonably concluded he was fit for service and therefore not entitled to a modification to his naval records. Mr. Philippeaux has not otherwise met his burden to demonstrate "by cogent and clearly convincing evidence that the [BCNR's] decision was arbitrary, capricious or unlawful." *Dorl v. United States*, 200 Ct. Cl. 626, 633 (1973). Because "substantial evidence supports the [BCNR's] action, and . . . that action is reasonable in light of all the evidence presented, the court will not disturb the result." *Pope v. United States*, 16 Cl. Ct. 637, 641 (1989).

ii. The Navy Did Not Err in Failing to Refer Mr. Philippeaux to the Disability Evaluation System

To the extent Mr. Philippeaux asserts the Navy erred by failing to refer him for a Disability Evaluation System Board, he is again incorrect. As the BCNR made clear, "[t]he purpose of the separation physical was to determine whether [Mr. Philippeaux] [was] physically qualified for discharge from active duty and whether any physical conditions existed that required a referral for treatment" or whether Mr. Philippeaux was "unable to perform [his] duties due to a disability condition" such that referral to the Disability Evaluation System was appropriate. (AR3). Referral to the Disability Evaluation System is only required if the servicemember is found to be unfit for service by a medical board. (DA7, 8). As discussed in detail above, there was no indication that Mr. Philippeaux was unfit for service at the time at the time of his separation physical conducted immediately prior to his discharge on October 1, 1980.

Therefore, the Navy did not err when it did not refer Mr. Philippeaux to the Disability Evaluation System.

iii.   <u>The Kurta Memo is Not Applicable to Mr. Philippeaux's Claims</u>

Mr. Philippeaux summarily asserts that he met the criteria for disability retirement based on the Kurta Memo, but the BCNR erroneously failed to heed that guidance in considering modification to his characterization of discharge. (Pl.'s MJAR at 3, 19). As explained above, the Kurta Memo was an expansion and clarification of the Hagel Memo. The purpose of the Hagel Memo was to give more weight to mitigating factors in evaluating a servicemember's misconduct leading to an "Other than Honorable" or "General" discharge characterization. (DA29–32). Petitions for modification were to be construed liberally to take into account the effects of previously undiagnosed Post Traumatic Stress Disorders on servicemembers, and review boards were directed to acutely consider whether a servicemember's PTSD motivated conduct that led to an other than honorable discharge. (DA31). Significantly, neither the Hagel Memo nor the Kurta Memo mention disability determinations.

Mr. Philippeaux received an honorable discharge from the Navy. (AR725). Thus, there is no misconduct to mitigate and no service characterization to change. By its own terms, the Kurta Memo applies to petitions for changes in discharge characterizations, not to BCNR determinations with respect to disability benefits. (*See* Mot. for Judicial Notice at 3, 6). Therefore, the Kurta Memo has no application to the relief Mr. Philippeaux seeks and provides no legal basis to disturb the determinations and conclusions of the BCNR.

*C.   Count II of Mr. Philippeaux's Complaint Must Be Dismissed Under RCFC 12(b)(1)*

The United States moves for dismissal of Count II under RCFC 12(b)(1). (Def.'s Mot. at 15–18). Because Mr. Philippeaux's Due Process and Equal Protection Clause claims are not money mandating, the Court lacks subject matter jurisdiction and the United States' motion must be granted.

A constitutional provision or statute is money mandating if it "can fairly be interpreted as mandating compensation by the Federal Government." *United States v. Navajo Nation*, 556 U.S. at 290 (quoting *United States v. Testan*, 424 U.S. 392, 400 (1976)). Mr. Philippeaux alleges violations of his constitutional rights to Due Process and Equal Protection under the Fifth Amendment to the United States Constitution. However, these constitutional provisions are not money-mandating. *Leblanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995); *Carruth v. United States*, 627 F.2d 1068, 1081 (Ct. Cl. 1980) (holding that the Court "has no jurisdiction over claims based upon the Due Process and Equal Protection guarantees of the Fifth Amendment, because these constitutional provisions do not obligate the Federal Government to pay money damages.").

Put simply, Count II does not present a dispute over monies owed by the United States Government. Where, as here, the Constitutional and statutory provisions relied upon by a plaintiff are not money-mandating, the Court of Federal Claims lacks jurisdiction and those claims must be dismissed for lack of subject matter jurisdiction. *Jan's Helicopter Serv., Inc. v.*

11

*Fed. Aviation Admin.*, 525 F.3d 1299, 1308 (Fed. Cir. 2008) (citing *Greenlee Cnty., Ariz. v. United States*, 487 F.3d 871, 876 (Fed. Cir. 2007)).

### III.   Conclusion

The BCNR's decision that Mr. Philippeaux is not entitled to a modification of his naval records is not arbitrary, capricious, unsupported by evidence, or contrary to law. The BCNR considered all important aspects of Mr. Philippeaux's claims, and its decision was both reasonable and supported by substantial evidence. Therefore, the United States is entitled to judgment on the administrative record with respect to Count I. The Court lacks subject matter jurisdiction to adjudicate the Fifth Amendment Due Process and Equal Protection claims Mr. Philippeaux brings under Count II, so those claims must be dismissed.

In summary, the Court **ORDERS** the following:

1. The United States' Cross-Motion for Judgment on the Administrative Record with respect to Count I, (ECF No. 61) is **GRANTED**.

2. The United States' Motion to Dismiss Count II, (ECF No. 61), is **GRANTED**.

3. Mr. Philippeaux's Motion for Judgment on the Administrative Record, (ECF No. 52) is **DENIED**.

4. Mr. Philippeaux's Motion for Declaratory Judgment (ECF No. 11), Motion for Permanent Injunction (ECF No. 23), and Motion to Strike (ECF No. 25) are **DENIED AS MOOT.**

5. No costs or fees awarded.

The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**



_David A. Tapp_
DAVID A. TAPP, Judge